**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| TAY TAY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-00501 |
| | ) | |
| JOHN BALDWIN, WARDEN JEFF | ) | |
| DENNISON, ASSISTANT WARDEN | ) | |
| WALKER, KRISTIN HAMMERSLEY, | ) | |
| SERGEANT HICKS, LIEUTENANT | ) | |
| PICKFORD, OFFICER GARRET, OFFICER | ) | |
| SORIA, LIEUTENANT CAMPBELL, | ) | |
| INTERNAL AFFAIRS OFFICER STUCK, | ) | |
| and OFFICER JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF**
**A PRELIMINARY INJUNCTION**

Plaintiff is a transgender woman currently housed in Danville Correctional Center, a medium security men's prison.  Plaintiff knew from a very young age that she was a female and began to openly identify as female around 27 years ago.  In 2010, she was first diagnosed with Gender Dysphoria by an IDOC psychiatrist, and that diagnosis has been continually reaffirmed. In 2013, IDOC finally began providing Plaintiff with hormone therapy.  Plaintiff was on hormone therapy for two years before an IDOC doctor discontinued her hormones after she addressed some concerns about the hormones without any real discussion regarding those concerns.  Plaintiff desires to continue hormone therapy, but wants to transition in an environment where she feels safe and protected—she has not been safe in any men's prison she has been housed thus far.  Despite being a transgender woman, Plaintiff has exclusively been housed in men's prisons since entering IDOC custody.

1

Plaintiff entered IDOC custody in 2002 and has been moved to several men's prisons throughout the last seventeen years.  Plaintiff has been sexually assaulted, harassed, and threatened by other prisoners and staff at every prison she has been housed.  Plaintiff has reported being sexually assaulted and harassed while in IDOC custody, yet IDOC staff have failed to protect Plaintiff from abuse.

While at Shawnee Correctional Center in June 2018, Plaintiff was raped by her cellmate. For two days before the rape, Plaintiff told Defendants Sergeant Hicks and Hammersley that her cellmate was being aggressive and threatening her, and that she did not feel safe with him, yet the Defendants ignored her pleas for help.  The night the raped occurred, an officer opened up her cell door and saw Plaintiff naked and scared on the floor, yet he did not intervene to protect her and instead walked away.  Plaintiff should never have been housed with this prisoner in the first place, given her status as a vulnerable prisoner and his status as a high risk prisoner due to previous allegations against him of sexual misconduct just months before.  Despite this, Defendants housed Plaintiff with him after she was forced to offer his name as a potential cellmate in order to be moved out of another cell with six individuals who were harassing her and stealing her property.

From Shawnee, Plaintiff was transferred to Dixon Correctional Center in August 2018, where she was verbally sexually harassed by correctional officers, including Defendant Soria, and was harassed and groped by other prisoners.  From Dixon, Plaintiff was transferred to Graham Correctional Center in February 2019, where the abuse did not stop.  At Graham, she was bullied and harassed by other prisoners, particularly when she tried to use the phone, and one prisoner in particular threatened her and attempted to force her to have sex with him.

2

Despite filing grievances and PREA complaints at both these facilities about the abuse and harassment she was experiencing, nothing was done to protect her.

From Graham, Plaintiff was transferred to Danville Correctional Center in March 2019, where she is currently housed.  Soon after arriving at Danville, another prisoner pushed Plaintiff toward the bathroom in an attempted sexual assault.  Another prisoner who officers were aware was constantly sexually harassing and threatening Plaintiff was moved onto the same housing unit as Plaintiff where he continued to harass her.  Additionally, officers attempted to house another prisoner who made derogatory statements toward Plaintiff in the same cell as Plaintiff; Plaintiff was only able to escape being housed with him because she went on suicide watch. Officers at Danville, including Defendants Lieutenant Campbell and Internal Affairs Stuck, are discouraging her from filing grievances and are refusing to do anything to protect Plaintiff from all the prisoners that are harassing and threatening her.

All the harassment and abuse Plaintiff has suffered has caused her mental health to severely deteriorate.  She has attempted suicide multiple times in IDOC and has frequently been on crisis watch; most recently, she was on suicide watch in April 2019.  Plaintiff has already faced serious physical and emotional injury since arriving at Danville and will continue to face a grave risk of serious injury if she remains there.

For these reasons, and pursuant to Federal Rule of Civil Procedure 65, Plaintiff seeks a preliminary injunction ordering Defendant Director John Baldwin in his official capacity to: 1) transfer Plaintiff to Logan Correctional Center, a women's prison; and 2) ensure that Plaintiff is protected from sexual abuse and harassment at the hands of both IDOC staff and other prisoners.

Preliminary injunctions are granted in extraordinary situations where there is a clear showing of need.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Cooper v. Salazar*, 196 F.3d

809 (7th Cir. 1999).  The need here could not be more obvious or more immediate.  Plaintiff's

situation satisfies each requirement for a preliminary injunction: (1) she will succeed on the

merits because IDOC has so clearly violated (i) her rights under the Equal Protection Clause of

the Fourteenth Amendment by discriminating against her on the basis of her gender identity and

housing her in a men's prison, and (ii) her rights under the Eighth Amendment by failing to

protect her from sexual assaults and subjecting her to cruel and unusual punishment; (2) in the

absence of intervention by this Court, Plaintiff will suffer irreparable harm—namely substantial

likelihood that she will continue to be subjected to serious threats to her physical safety and

emotional well-being; (3) there is no adequate remedy at law—only an injunction will ensure

that Plaintiff is transferred to a women's prison and is protected from sexual abuse; and (4)

ensuring that IDOC appropriately houses Plaintiff in a women's facility and protects her from

harm will further the public interest and will not harm IDOC in any way.  *See AM Gen. Corp. v.*

*DaimlerChrysler Corp.*, 311 F.3d 796, 803-804 (7th Cir. 2002).  Thus, this Court must act in

order to ensure that Plaintiff's constitutional rights are not continually violated and that she is

appropriately housed.

I. **Plaintiff's claims that IDOC violated her constitutional rights under the Fourteenth Amendment and Eighth Amendment will likely succeed on the merits.**

In order to demonstrate a substantial likelihood of success on the merits, a plaintiff must

demonstrate "a plausible claim on the merits."  *Hoosier Energy Rural Elec. Co-op., Inc. v. John*

*Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009).  Courts should not "improperly

equat[e] 'likelihood of success' with 'success.'"  *Michigan v. U.S. Army Corps of Eng'rs*, 667

F.3d 765, 782 (7th Cir. 2011) (quoting *University of Texas v. Camenisch,* 451 U.S. 390, 394

(1981)).  "[T]he threshold for establishing likelihood of success is low."  *Id.*  A plaintiff need

"only to present a claim plausible enough that (if the other preliminary injunction factors cut in their favor) the entry of a preliminary injunction would be an appropriate step." *Id.* at 783. To determine whether a plaintiff's legal argument has a likelihood of succeeding, courts use whatever existing test would be employed to decide the merits of the case. *See S./Sw. Ass'n of Realtors v. Evergreen Park, IL*, 109 F.Supp.2d 926, 927 (N.D. Ill. 2000).

In this case, Plaintiff has a high chance of success on the merits of all her claims, but below will focus on the claims particularly relevant to the emergency relief she seeks—her Fourteenth Amendment and Eighth Amendment claims.

### A.      Plaintiff will prevail on her claim that IDOC violated her rights under the Equal Protection Clause by housing her in a men's facility.

IDOC houses all non-transgender women in women's prisons, but forces Plaintiff, a transgender woman, to be housed with men, merely because of the sex stereotypes associated with her assigned birth.[1] This is precisely the type of "intentional and arbitrary discrimination" the Equal Protection Clause of the Fourteenth Amendment forbids. *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017). Transgender people can allege that their right to equal protection has been violated when a government entity treats people who fail to conform "to the sex-based stereotypes associated with their assigned sex at birth, differently." *Id.* at 1051. To state an equal protection claim under Section 1983, Plaintiff

---

[1] Although there has been two recent instances of transgender woman prisoners being transferred to the women's division in IDOC, that occurred only after extensive litigation and entry of a preliminary injunction against IDOC. *See Hampton v. Baldwin, et al*, No. 3:18-cv-550-NJR-RJD, 2018 WL 5830730, (S.D. Ill. Nov. 7, 2018). In Ms. Hampton's case, the Court directed IDOC to undertake the kind of individualized housing evaluation called for under PREA regulations. Once IDOC undertook this evaluation, it made the obviously appropriate decision to transfer Ms. Hampton to a women's facility. *See* Angie Leventis Lourgous, *I'm Safe Here: Transgender Woman Describes Life at Illinois Woman's Prison*, CHICAGO TRIBUNE, Jan 29, 2019. After Ms. Hampton was transferred, IDOC agreed to transfer another prisoner, Ms. Monroe, after doing an individualized housing evaluation at the request of counsel in order to avoid another lawsuit.

5

must show that the Defendant "acted with a nefarious discriminatory purpose and discriminated against her based on her membership in a definable class." *D.S. v. East Porter Cty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015). Claims regarding discrimination on the basis of sex are subject to heightened scrutiny. *Whitaker*, 858 F.3d at 1050. This means that when a sex-based classification is used, the burden rests with the state to show that "the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objects." *Id.* (quoting *U.S. v. Virginia*, 518 U.S. 515, 524 (1996)). Neither the Supreme Court nor the Seventh Circuit have decided whether transgender status is per se entitled to heightened scrutiny. However, the Seventh Circuit in *Whitaker* applied heightened scrutiny to a transgender boy's equal protection claim against the School District, claiming that the plaintiff had experienced a form of sex-discrimination by being barred from using the boys' bathroom. *Id.* at 1051. In that case, the Seventh Circuit found that the plaintiff demonstrated a likelihood of success on his equal protection claim and upheld the district court's grant of a preliminary injunction enjoining the School District from denying the plaintiff access to the boys' restroom. *Id.* at 1052.

Several courts in this district and others have also applied heightened scrutiny to equal protection claims involving transgender individuals. Most notably, a court in the Southern District of Illinois recently applied heightened scrutiny in a similar case brought by Strawberry Hampton, a transgender woman housed in a men's prison who sought a preliminary injunction ordering transfer to a women's prison to halt pervasive abuse by prisoners and officers. *Hampton v. Baldwin, et al*, No. 3:18-cv-550-NJR-RJD, 2018 WL 5830730, at *11 (S.D. Ill. Nov. 7, 2018) ("IDOC's policy of housing cisgender women in women's prisons but forcing transgender women to be housed with men based on their assigned gender at birth, is a

classification based on sex that causes her to be treated differently from similarly situated female inmates.  Therefore, heightened scrutiny applies."); s*ee also e.g.*, *Doe v. Massachusetts Dep't of Correction, et al.*, No. 17-12255-RGS, 2018 WL 2994403, at *9 (D. Mass. June 14, 2018) ("The trend in recent cases is to apply heightened scrutiny to classifications based on transgender status." (collecting cases)); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Edu.*, 208 F. Supp. 3d 850, 873-74 (S.D. Ohio 2016) (applying the Supreme Court's four-factor test to determine whether a new classification requires heightened scrutiny and concluding that transgender individuals are a quasi-suspect class); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015) (finding that transgender people are a quasi-suspect class and applying intermediate scrutiny to defendants' treatment of plaintiff); *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015) ("the Court concludes that discrimination based on transgender status independently qualifies as a suspect classification under the Equal Protection Clause because transgender persons meet the indicia of a "suspect" or "quasi-suspect classification" identified by the Supreme Court" (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1201 (9th Cir. 2000)); *Mitchell v. Price*, No. 11-cv-260-wmc, 2014 WL 6982280, at *8 (W.D. Wis. Dec. 10, 2014) ("[a]lthough the issue has yet to be settled in this circuit, the parties agree that Mitchell's Fourteenth Amendment equal protection claims based on her transgender status receive heightened scrutiny" (citing *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2012)).

Further, the Supreme Court has held that heightened scrutiny standard of review, rather than rational basis standard of review applied in certain prison cases, governs a prisoner's claims of discrimination under the Equal Protection Clause.  *See Johnson v. California*, 543 U.S. 499, 510-11 (2005) (finding that strict scrutiny applied to prisoner's equal protection claim against corrections officials challenging the policy of racially segregating prisoners because the right not

7

to be discriminated against "is not a right that need necessarily be compromised for the sake of proper prisoner administration").

Adopting the reasoning in the above cited cases, Plaintiff's equal protection claims should be analyzed under heightened scrutiny. Plaintiff has experienced sex discrimination analogous to the plaintiff in *Whitaker*—IDOC refuses to place Plaintiff in a women's prison despite her status as a transgender woman simply because she was assigned male at birth. Defendant is well aware of Plaintiff's status as a transgender woman—medical professionals in IDOC have continuously diagnosed Plaintiff with Gender Dysphoria and she was on hormone therapy for two years while in custody.

IDOC's decision to house Plaintiff in a men's facility is not based on any legitimate penological purpose. Assignment to a women's prison would not only affirm Plaintiff's gender identity, but it would put her in an atmosphere where she would be protected from ongoing sexual assault and harassment and it would give her access to mental health services she needs to stay safe. The warden of Logan Correctional Center has acknowledged that transgender women can be appropriately housed at Logan. Regarding Strawberry Hampton, the transgender woman who was recently transferred to Logan, the warden stated he "believes living in an environment of women, with programming catered to those gender differences, will provide an opportunity for her to excel." Angie Leventis Lourgous, *I'm Safe Here: Transgender Woman Describes Life at Illinois Woman's Prison*, CHICAGO TRIBUNE, Jan 29, 2019. In addition, the mental health program at Logan is equipped to deal with prisoners suffering from trauma disorders and gender dysphoria. *Id.* ("Logan has undergone an immense culture shift recently, with staff undergoing innovative training on strategies for working with female inmates, recognizing trauma, de-escalating conflict and working with those who are mentally ill.").

At the same time, Plaintiff does not present a risk to other women at Logan. Plaintiff is not sexually attracted to women. Although Plaintiff has been convicted of violent crimes, the same is true for a significant number of cisgender women currently housed at Logan. Accordingly, the Defendant will likely not be able to establish that Plaintiff's placement in a men's prison is substantially related to an important government interest. *See Hampton*, 2018 WL 5830730, at *12 (finding that transgender female inmate's equal protection claim based on her placement in a men's prison had a "greater than negligible chance of success on the merits"); *Massachusetts Dep't of Correction*, 2018 WL 2994403, at *9 (refusing to dismiss transgender woman prisoner's equal protection claim because "[t]he court agrees with Doe that for present purposes the DOC has not met its burden of demonstrating that housing her and other similarly-situated transgender prisoners in facilities that correspond to their birth sex serves an important governmental interest"); *Norsworthy*, 87 F. Supp. 3d at 1120 (finding that transgender woman prisoner adequately stated equal protection claim against prison officials for denying her sex reassignment surgery); *Mitchell*, 2014 WL 6982280, at *11-12 (denying summary judgement on transgender woman prisoner's equal protection claim against officer who transferred her back to a block where she encountered taunts and threats).

**B.  Plaintiff will prevail on her claim that IDOC violated her rights under the Equal Protection Clause by constantly sexually harassing her.**

IDOC has also intentionally discriminated against Plaintiff by subjecting her to constant verbal sexual harassment, insults, threats, and intimidation that male prisoners do not endure due to her transgender status. It is well settled that sexual harassment is a form of gender discrimination proscribed by the Equal Protection Clause. *See, e.g.*, *Locke v. Haessig*, 788 F.3d 662, 667 (7th Cir. 2015) (finding that it was clearly established that "sexual harassment by a state actor under color of state law violated the Equal Protection Clause and was actionable under §

1983"); *Hickman v. Laskodi*, 45 Fed. App'x 451, 455 (6th Cir. 2002) ("This court made clear long before [the date of the incident] that sexual harassment by government official violates the Equal Protection Clause."); *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743-49 (2d Cir. 2003) (denying summary judgement on student's claim that professor violated her rights under the Equal Protection Clause by sexually harassing her).  To succeed on a sexual harassment claim, Plaintiff must establish that (1) the harassment was intentional and based on sex and (2) the harassment was "sufficiently severe or pervasive."  *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990); *see also Adair v. Hunter*, 236 F. Supp. 3d 1034, 140 (E.D. Tenn. 2017) (While isolated incidents of verbal harassment do not rise to the level of constitutional violations, "where, as here, a plaintiff alleges ongoing harassment, the equal protection clause applies.").

Plaintiff satisfies both prongs.  Since being housed in IDOC custody, including during her most recent placement at Danville, Plaintiff has been constantly harassed based on her gender identity.  On a daily basis, prisoners and correctional officers call her derogatory names such as "fag," "faggot," "bitch," "cocksucker," and more.  In addition, correctional and medical staff constantly misgender Plaintiff, referring to her as "mister" and using male pronouns even though they are aware that she is a transgender woman.  The sexual harassment that Plaintiff experiences is so severe and pervasive that it rises to the level of a constitutional violation.  *See Hampton*, 2018 WL 5830730, at *12 (finding transgender woman's equal protection claim based on sexual harassment in a male prison was likely to succeed on the merits where prisoners and correctional officers constantly misgendered her and verbally abused her with slurs such as "fag," "it," "he-she", and "dick-sucker"); *Owens v. Ragland*, 313 F. Supp. 2d 939, 944-47 (W.D. Wis. 2004) (denying summary judgement on plaintiff's equal protection claim where city official made sexually explicit comments and proposals to plaintiff); *Joyner v. Snyder*, No. 06-3062,

2007 WL 401269, at *2 (C.D. Ill. Feb. 1, 2007) (finding that prisoner sufficiently stated an equal

protection violation where prisoner alleged that he was harassed and discriminated against

because of his sexual orientation).

C.   **Plaintiff will prevail on her claim that IDOC violated her rights under the Eighth Amendment by failing to protect her from sexual abuse and harassment.**

To succeed on a failure to protect claim, Plaintiff must show that (1) she was

"incarcerated under conditions posing substantial risk of serious harm" and (2) "the defendants

acted with 'deliberate indifference' to [her] health or safety." *Santiago v. Walls*, 599 F.3d 749,

756 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The sexual abuse

and harassment that Plaintiff has suffered in IDOC custody constitute "serious harm." *See*

*Farmer*, 511 U.S. at 833-34 (treating sexual assault as serious harm); *Brown v. Budz*, 398 F.3d

904, 910-11 (7th Cir. 2005) (finding that a "beating suffered at the hands of a fellow detainee . . .

clearly constitutes serious harm").

To prove deliberate indifference, Plaintiff must establish that the Defendants knew she

faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable

measures to abate it. *See Farmer*, 511 U.S. at 847. Plaintiff must show that the Defendants had

"*actual* knowledge of the risk." *Washington v. LaPorte Cty. Sheriff's Dep't*, 306 F.3d 515, 518

(7th Cir. 2002). This "is a question of fact subject to demonstration in the usual ways, including

inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. "If 'the circumstances

suggest that the defendant-official being sued had been exposed to information concerning the

risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier

of fact to find that the defendant-official had actual knowledge of the risk.'" *Sanville v.*

*McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001) (quoting *Farmer*, 511 U.S. at 842-43); *see also*

*Washington*, 306 F.3d at 519 ("Under some circumstances, a risk might be so obvious that actual knowledge on the part of prison officials may be inferred."). Furthermore, Plaintiff "can establish exposure to a significantly serious risk of harm by showing that [s]he belongs to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates." *Farmer*, 511 U.S. at 843 (quotation omitted).

First, Defendants have knowledge that Plaintiff faces a substantial risk of serious harm from both other prisoners and staff. Defendants know that Plaintiff has already been sexually abused at several men's prisons—they have actual knowledge of the risk of harm by nature of their participation in Plaintiff's other lawsuits, Plaintiff's grievances and PREA complaints, and prior Internal Affairs investigations. Additionally, Defendants know that Plaintiff is a transgender woman and is therefore particularly vulnerable in a men's facility. In *Hampton v. Baldwin*, the plaintiff, a transgender woman, drew attention to the years of severe verbal and sexual and physical abuse she suffered at the hands of both prisoners and correctional staff while housed in IDOC men's prisons. *Hampton*, 2018 WL 5830730, at *2-3. As a result, a federal judge ordered IDOC to train all prison staff on transgender issues to "immediately . . . address the institutional problems that surfaced during the evidentiary hearing." *Id.* at *16; *see also Perkins v. Martin*, No. 3:14-cv-00191-SMY-PMF, 2016 WL 3670564, at *3 (S.D. Ill. Jul. 11, 2016) (citing *Farmer* and listing "transgender prisoner with feminine characteristics in male prison" as a "situation where the prisoner plaintiff exhibits characteristics that make them more likely to be victimized"); *Doe v. District of Columbia*, 215 F. Supp. 3d 62, 77 (D.D.C. 2016) (finding that a jury could infer that prison officials "knew Doe faced a substantial risk of rape because of her status as a transgender woman."); *Zollicoffer v. Livingston*, 169 F. Supp. 3d 687, 691 (S.D. Texas 2016) (citing 2011 data from the Bureau of Justice Statistics, which "reported

that 34.6% of transgender inmates reported being the victim of sexual assault," approximately 9 times the rate of other prisoners, and stating that "[t]he vulnerability of transgender prisoners to sexual abuse is no secret.").

Second, Defendants disregarded the risk by failing to take reasonable measures to protect Plaintiff from abuse at the hands of other prisoners.  The Defendants failed to protect Plaintiff from a prisoner at Shawnee who raped her in her cell; prisoners at Dixon who harassed and groped her; prisoners at Graham who harassed and threatened her, and in particular one prisoner who tried to force Plaintiff to have sex with him; and three prisoners at Danville who have sexually abused, harassed, and threatened Plaintiff.  On information and belief, none of these prisoners were punished for harming Plaintiff.  *See Hampton*, 2018 WL 5830730, at *13 (finding transgender female plaintiff had a likelihood of success on the merits of her failure to protect claim where IDOC took no steps to protect her from future verbal and sexual harassment and abuse even after substantiated PREA complaints); *see also Farmer*, 511 U.S. at 845 ("one does not have to await the consummation of threatened injury to obtain preventive relief" (citation omitted)); *Zollicoffer*, 169 F. Supp. 3d at 696 (finding that "Plaintiff sufficiently alleged facts to show that Defendant knew of, and was deliberately indifferent to, the high risk of sexual assault of gay and transgender inmates at the TDCJ facilities"); *Hoskins v. Dilday*, No. 16-CR-334-MJR-SCW, 2017 WL 951410, at *6 (S.D. Ill. Mar. 10, 2017) (finding a strong likelihood that Plaintiff will succeed on the merits of his Eighth Amendment claim where he alleged that he had been physically attacked by several defendants while other defendants did nothing to help him and that he had been threatened with future physical harm); *Mitchell v. Baker*, No. 13-cv-0860-MJR-SCW, 2015 WL 278852, at *5 (S.D. Ill. Jan. 21, 2015) (finding that Plaintiff has a

substantial probability of success of the merits of his Eighth Amendment claim where he alleged that officers victimized him via frequent threats and physical abuse).

## II.       Plaintiff will suffer irreparable harm in the absence of a preliminary injunction.

A preliminary injunction is necessary to avert three forms of irreparable harm to Plaintiff: 1) the ongoing violation of her constitutional rights, which in itself constitutes irreparable harm; 2) the continued, serious threats to her physical safety; and 3) the continued, serious threats to her mental health.

First, the Defendants continual deprivation of Plaintiff's Eighth and Fourteenth Amendment rights, as previously described, is an irreparable harm sufficient to warrant a preliminary injunction. *See Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest.") (affirming grant of preliminary injunction in prison conditions case); *Planned Parenthood of Ind. and Ky., Inc. v. Commissioner*, 194 F. Supp. 3d. 818, 835 (S.D. Ind. 2016) (finding that the "presumption of irreparable harm also applies to equal protection violations").

Second, Plaintiff's physical safety is at risk.  The Defendants has made it clear that they will not protect Plaintiff from other prisoners who wish to harm her.  The Defendants already allowed multiple prisoners to sexually assault, harass, and threaten her.  *See Hampton*, 2018 WL 5830730, at *15 (finding that transgender prisoner faced irreparable harm where she was continuously sexually assaulted in men's facilities and IDOC did nothing to protect her); *Hoskins*, 2017 WL 951410, at *6 (finding that prisoner faced irreparable harm if he remained at Menard, where he "faces physical threats and is prevented from receiving needed medications and food trays at times"); *Mitchell*, 2015 WL 278852, at *5 (finding that irreparable harm was

14

"undisputed" where plaintiff alleged that officers at Menard victimized him via frequent threats and physical abuse); *White v. Jindal*, No. 13-15073, 2014 WL 1608697, at *6 (E.D. Mich. 2014) (finding that prisoner would suffer irreparable harm absent a preliminary injunction ordering his transfer to another facility where prisoner claimed that he was beaten by other prisoners and "warned that he would be beaten further if he did not provide 'protection money'"); *Pocklington v. O'Leary*, No. 86 C 2676, 1986 WL 5748, at *1 (N.D. Ill. May 6, 1986) (granting TRO and ordering warden not to return prisoner to general population status where plaintiff had been raped by other inmates, notified prison officers, and was ignored by them).

Third, Plaintiff's mental health is at risk.  She has been forced to endure constant sexual abuse and harassment at various men's facilities, including Danville, which has taken a toll on her mental health.  *See Hampton*, 2018 WL 5830730, at *15 (finding that transgender prisoner faced irreparable harm where her mental health was at risk of "degrading further" due to daily verbal harassment and discrimination by prison staff); *Jones'El v. Berge*, 164 F. Supp. 2d 1096, 1123 (W.D. Wis. 2001) (finding that plaintiffs would suffer irreparable harm absent a preliminary injunction where the conditions at Supermax posed a grave risk of harm to seriously mentally ill inmates).  Plaintiff has already attempted suicide multiple times and has frequently been on crisis watch, including in April 2019.  There is a serious risk that Plaintiff will continue to have suicidal ideations or otherwise harm herself if she continues to be housed at a men's prison.

III.     **Plaintiff lacks an adequate remedy at law for ongoing violations of constitutional rights and risks to safety.**

Money will not make Plaintiff whole or protect her from physical and emotional abuse. Only an order from this Court will accomplish this.  *See Flower Cab Co. v. Petitte*, 685 F.2d 192, 195 (7th Cir. 1982) (stating that in prison conditions cases, "the quantification of injury is

difficult and damages are therefore not an adequate remedy"); *Foster v. Ghosh*, 4 F. Supp. 3d 974, 983 (N.D. Ill. 2013) (granting preliminary injunction to prisoner requiring medical attention; no adequate remedy at law exists because "the consequence of inaction at this stage would be further deteriorated vision in both eyes"); *Pocklington*, 1986 WL 5748, at *1 (where prisoner faces a risk of rape,"[d]amages are plainly not an adequate remedy for the kind of further indignity with which [he] is threatened").

### IV.     Plaintiff will suffer greater harm if a preliminary injunction is denied than Defendants will suffer if a preliminary injunction is granted and an injunction is in the public interest.

The balance of harms tips decidedly in Plaintiff's favor.  The injunction sought here merely requires that the Defendants do their job: protect Plaintiff from abusive staff and prisoners, and house her appropriately.  Plaintiff requests transfer to Logan Correctional Center as the best way to protect her from further harm.  Such an injunction would ensure Plaintiff's health and safety and end her physical and emotional suffering caused by the Defendants. Adhering to this injunction would cause the Defendants minimal harm as "transfers of inmates occur on a daily basis; movement of inmates is normal." *Jones 'EL v. Berge*, 164 F. Supp. 2d 1096, 1123 (W.D. Wis. 2001) (finding that "[t]ransferring five prisoners would not burden the department logistically or financially" and therefore the balance of harms tips in plaintiff's favor); *see also Hoskins*, 2017 WL 951410, at *6 (order transfer of inmate out of Menard to another facility because "the burden placed on Defendants by mandating Plaintiff's transfer is not greater than the risk of irreparable harm to Plaintiff").  Furthermore, without this injunction, Defendants will likely continue to pass Plaintiff from male institution to male institution like a hot potato, exacting greater cost to both them and Plaintiff.

Further, to the extent IDOC attempts to argue that transferring Plaintiff to a women's prison would pose a harm to the other women prisoners, this position is unfounded. Plaintiff poses no risk to the safety of other women prisoners. Although Plaintiff has been convicted of violent crimes, the same is true for a significant number of cisgender women currently housed at Logan. Additionally, there are currently two transgender woman prisoners at Logan, and the warden of Logan has publically acknowledged that transgender women can be appropriately housed at Logan.

Moreover, it is in the public interest to ensure that Plaintiff's constitutional rights are not violated by correctional officers. *See Hoskins*, 2017 WL 951410, at *7 ("In this case the public interest is best served by ensuring that corrections officers obey the law."); *Jones 'EL*, 164 F. Supp. 2d at 1125 ("Respect for law, particularly by officials responsible for the administration of the State's correctional system, is in itself a matter of the highest public interest.").

**V.    The Court should waive bond.**

Under Federal Rule of Civil Procedure 65(c), district courts have discretion to determine the amount of the bond accompanying a preliminary injunction, and this includes the authority to set a nominal bond. In this case, the Court should waive bond because Plaintiff is indigent, the requested preliminary injunction is in the public interest, and the injunction is necessary to vindicate constitutional rights. *See Pocklington*, 1986 WL 5748, at *2 ("[B]ecause of [a prisoner's] indigent status, no bond under Rule 65(c) is required."); *Davis v. Mineta*, 302 F.3d 1104, 1126 (10th Cir. 2002) ("minimal bond amount should be considered" in public interest case); *Complete Angler, L.L.C. v. City of Clearwater*, 607 F.Supp.2d 1326, 1335 (M.D. Fla.

2009) ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right.").[2]

## CONCLUSION

For the foregoing reasons, the Court should order an evidentiary hearing on the motion for a preliminary injunction at the earliest possible date and/or enter a preliminary injunction enjoining IDOC to: 1) transfer Plaintiff to Logan Correctional Center, a women's prison; and 2) ensure that Plaintiff is protected from sexual abuse and harassment at the hands of both IDOC staff and other prisoners.

Respectfully submitted,

**TAY TAY**

By: /s/ Vanessa del Valle
        One of her attorneys

Sheila A. Bedi
Vanessa del Valle
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611
(312) 503-1271
sheila.bedi@law.northwestern.edu
vanessa.delvalle@law.northwestern.edu

Alan Mills
Elizabeth Mazur
Uptown People's Law Center
4413 N. Sheridan

---

[2] In addition to the general preliminary injunction requirements discussed above, the Prison Litigation Reform Act requires a court to make certain additional findings when granting a preliminary injunction "[i]n any civil action with respect to prison conditions." 18 U.S.C. § 3626(a)(2).  Specifically, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."  *Id.*  In this case, the requested provisional remedy—transferring Plaintiff to Logan and protecting her from harm—tracks the very constitutional violations that Plaintiff suffered, and therefore is narrowly tailored to remedy them.

Chicago, IL 60640
(773) 769-1411
alan@uplcchicago.org
liz@uplcchicago.org

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that she served the foregoing document upon all persons who have filed appearances in this case via the Court's CM/ECF system on May 14, 2019.

/s/ Vanessa del Valle