**Declaration of Dr. George R. Brown, MD, DFAPA**

I, Dr. George R. Brown, MD declare under penalty of perjury the following:

1. I am a medical doctor who is Board Certified in Psychiatry. I serve on the faculty of the East Tennessee State University Quillen College of Medicine, where I currently hold the position of Professor of Psychiatry and Associate Chairman for Veterans Affairs. I also hold a teaching appointment related to my expertise with transgender healthcare and research at the University of North Texas, Texas College of Osteopathic Medicine, and a teaching and research position in psychiatry at the Mountain Home Veterans Affairs Medical Center, predominantly focusing on inpatient psychiatric cases. I have personally evaluated and made decisions on involuntary hospitalizations for at least 4,000 patients, following appropriate due process for each decision. In those cases where a person's freedom was restricted based on my clinical decision, not one decision was ever overturned by a judge who has heard the case. Additionally, for over three decades, my research has focused principally on the study of transgender health. I have been involved in the clinical evaluation and treatment of patients with Gender Dysphoria for approximately thirty years. Further, since 1990, I have served on the World Professional Association for Transgender Health (WPATH) Committee to Revise the Standards of Care, and I was a coauthor of the current version of the Standards of Care, Version 7 (2011). I continue to serve as a Cochairman of the Institutionalized Persons Committee for WPATH, which involves coauthoring the revisions to the Standards of Care, Version 8, anticipated for release in 2020. Attached to this declaration as Exhibit 1 is my CV.

2. At the request of her counsel, I reviewed the medical records of Illinois Department of Corrections (IDOC) inmate Carl Tate, who I will refer to by her preferred name, Tay Tay, and with female pronouns. This is the standard convention for health care providers

1

who follow the Standards of Care for transgender and gender non-conforming persons.  My review included records from the following correctional centers: Menard, Pontiac, Stateville, Lawrence, Pinckneyville, Hill, Big Muddy, Illinois River, Western Illinois, Centralia, Shawnee, Dixon, Graham, and Danville. The earliest records dated from 2002 and the most current progress notes are dated July 23 and July 25, 2019. Additionally, I reviewed excerpts from Dr. William Puga's deposition and the IDOC Administrative Directive 04.04.100 describing the mental health programs and services provided by the agency. This declaration focuses on my analysis of the most recent progress notes and the IDOC's decision to force Tay Tay into involuntary psychiatric hospitalization against her explicitly stated wishes.

      3.      According to IDOC's own policy, Administrative Directive 04.04.10, "all mental health services shall be provided on a voluntary basis unless it is determined that the offender is gravely disabled, suicidal, or poses a serious threat to self or others in the near future." Gravely disabled is specifically defined in this directive as: "a condition where a person, as a result of a mental disorder, is in danger of serious physical harm, resulting from a failure to provide for his or her essential human needs of health or safety, or manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions." There is no recent record indicating that Tay Tay has been diagnosed with a "grave" disability or is either homicidal or suicidal. In fact, her records since 2002 would rarely, if ever, support a designation of "gravely disabled" and not a single clinician in 17 years has ever designated her as "gravely disabled."  None of the recent records support involuntary hospitalization. To the contrary, the records demonstrate that Tay Tay had insight into her condition and the presence of mind to request assistance on her own. Indeed, the fact that Tay Tay requested additional mental health services contraindicates involuntary psychiatric

hospitalization. Tay Tay's assigned Mental Health Professional (MHP), Alexis Joseph, evaluated her on both 23 and 25 July and documented that Tay Tay had no notable mental status changes at all: "mood is good, calm and cooperative, insight and judgment good, denies SI/HI [suicidal ideation/homicidal ideation], clear and coherent [thought processes]." Based on my review of the relevant records and the actual assessment of her own MHP and testimony, Tay Tay's involuntary, psychiatric hospitalization is in no way clinically indicated.  The decision appears to be capricious and punitive and clearly in violation of IDOC's own policies.

    4.    On July 23, 2019, Tay Tay sought mental health services and reported that she was feeling "stressed out," "overwhelmed," and "anxious" about communication with her lawyers and her lawsuits. She reported that she "didn't want to do nothing stupid" and that her anxiety was a 5/10. She also reported no difficulty sleeping and expressed a desire for increased mental health services. She denied suicidal or homicidal ideation. Her clinician described her mood as good and stated that she was calm and cooperative with a coherent thought process. The clinician also noted that she was in no apparent distress or agitation and noted that her prognosis was "fair." There have been several past clinical situations where Tay Tay has described similar symptoms and the clinicians have followed their protocols for crisis watch status and other facility interventions as well outlined in Administrative Directives 04.04.100 and 04.04.102.  At no time were the symptoms listed as "gravely disabling" and at no time were these same/similar symptoms the basis for involuntary inpatient psychiatric transfer.

    5.    As stated above, nothing in this document suggests the need for emergency, inpatient hospitalization. For this reason, the information contained in the July 25, 2019 mental progress note is inexplicable, as it is clinically and logically inconsistent. That note reiterated that Tay Tay was calm and cooperative and had good insight and judgement. The note indicates

that the Chief of Psychiatry, Dr. Puga directed Tay Tay's transfer to an inpatient psychiatric hospital and reflects clearly that Tay Tay objected to the transfer and attempted to exercise her rights to call witnesses at the hearing held to determine whether she should in fact be transferred—but was denied that right because of the "emergency." There is no documentation available to me that indicated that Dr. Puga ever talked to, or evaluated, Tay Tay which makes his decision even more mystifying to me.

6.   To be clear, Tay Tay's records indicate that she does live with anxiety on a chronic basis but not as a separate diagnosis. Her anxiety is a symptom of both undertreated Gender Dysphoria (which is her primary diagnosis as listed by her own clinicians) and as a symptom of Post-Traumatic Stress Disorder (which is largely an anxiety disorder itself). In the past, she may have been in temporary crisis, and the clinicians at each facility followed their protocols to resolve the crisis, usually in the matter of a day or two, and without involuntarily administered psychiatric medications and without involuntary psychiatric inpatient transfer. This, coupled with her current essentially normal mental status examination, does not justify the decision to subject her to involuntary psychiatric hospitalization now. Unnecessary, involuntary psychiatric treatment is not a benign intervention and can have serious negative outcomes for patients who are inappropriately forced into such an environment. Generally patients who are involuntarily hospitalized in an inpatient psychiatric unit are placed in groups with very low functioning, often psychotic individuals who are persistently and chronically severely mentally ill ("gravely disabled" in IDOC parlance). Programming, by necessity, is cognitively at a very rudimentary level and generally does not include the individual, cognitively based therapy that Tay Tay needs. Among other negative outcomes, she will suffer the opportunity cost of not being allowed to get proper treatment for either her primary diagnosis (Gender Dysphoria) or

the individualized, cognitively based therapy she needs for PTSD.  The irony is that the committee is supposedly sending her to such an environment "to better meet her needs" but quite the contrary is likely to be the case. Being housed with severely mentally ill, psychotic patients would be frightening to the average person who does not have a mental illness, but for those with PTSD and significant anxiety symptoms prior to being forced into such an environment, a significant increase in symptoms and deterioration of her current mental health is highly likely. It is likely she will not sleep well in this environment and that she will be significantly anxious around severely mentally ill individuals who are often unpredictable, suicidal, and possibly homicidal.

7. Further, it is my understanding based on information provided to me by Tay Tay's counsel that at Elgin she is denied access to razors, hair ties, and a mirror. This is typical of environments housing involuntary, gravely disabled, psychiatric patients. As a result, Tay Tay is unable to shave her facial and body hair and is unable to appropriately groom herself. Patients with Gender Dysphoria, including Tay Tay, typically deteriorate under such conditions, as their gender dysphoria symptoms often get significantly worse.

The opinions I express above are based on my knowledge and experience and were developed by analyzing the medical records that have been provided to me and on my three prior interviews with Tay Tay. I reserve the right to change or modify my opinions should additional evidence become available. Pursuant to 28 USC 1746, I declare, certify, verify, and state on this day, under penalty of perjury that the forgoing is true and correct.

Date: July 31, 2019

Signature  _____
George R. Brown, MD, DFAPA