IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TAY TAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-00501-NJR |
| | ) | |
| JEFF DENNISON, LU WALKER, KRISTEN HAMMERSLEY, LARRY HICKS, JERID PICKFORD, JOE GARRETT, JAMIN SORIA, CHARLES CAMPBELL, GREGORY STUCK, and ROB JEFFREYS, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Tay Tay is a transgender inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Danville Correctional Center ("Danville"). Tay Tay is not her name given at birth but instead, a shortened version of her preferred transgender name, Tavia.

On July 26, 2019, Plaintiff filed a First Amended Complaint (Doc. 64) asserting Fourteenth Amendment Equal Protection claims against Defendant Jeffreys in his official capacity (Counts 1 and 2), an Eighth Amendment failure to protect claim against Defendant Jeffreys in his official capacity and against all other Defendants in their individual capacities (Count 3), an ADA claim against Defendant Jeffreys in his official capacity (Count 4), a Fourteenth Amendment due process claim against Defendant Jeffreys in his official capacity (Count 5), a First Amendment retaliation claim against

Defendant Jeffreys in his official capacity (Count 6), an unlawful policy and practice (*Monell*) claim against Defendant Jeffreys in his official capacity (Count 7), and an Illinois state law claim for intentional infliction of emotional distress against all Defendants (Count 8). She seeks monetary damages as well as declaratory and injunctive relief. Defendants have filed a Motion to Dismiss the First Amended Complaint and for Change of Venue (Doc. 103). Plaintiff has filed a response (Doc. 116) in opposition to the motion.

## MOTION TO DISMISS

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all allegations in the Complaint as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The federal system of notice pleading requires only that a plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The allegations, however, must be "more than labels and conclusions." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

Defendants contend all eight Counts of the First Amended Complaint fail to state a claim and should be dismissed. Additionally, they contend Counts 1, 2, 3, and 4 are

duplicative of claims in *Tate v. Wexford, et al.*, Case No. 16-92, and should be dismissed.[1]

## Failure to State a Claim

*Counts 1 and 2 – Equal Protection*

"The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated should be treated alike." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017) (internal citation and quotation marks omitted). Defendants argue Counts 1 and 2 should be dismissed because Plaintiff failed to allege that she was treated differently than other inmates similarly situated. In Count 1, Plaintiff alleges that she is being treated differently than cisgender female inmates because she is housed in a men's prison. In Count 2, Plaintiff alleges she has been subjected to pervasive sexual harassment that cisgender male inmates do not endure. Defendants point out that Plaintiff fails to allege that she is similarly situated to cisgender female inmates in Count 1 and also fails to allege that she is similarly situated to cisgender male inmates in Count 2.

It is true that Plaintiff does not use the term "similarly situated" in her complaint. For purposes of Count 1, however, her allegations suggest that the Court should look at how she has been treated relative to other female inmates in IDOC. Her assignment to men's prisons in IDOC resulted from her biological sex assignment at birth and an ensuing determination that she was ineligible to be assigned to a women's prison. In this sense, compulsory assignment to a men's prison caused her to be treated differently from

---

[1] The Court was advised on March 2, 2020, that the 2016 case has settled, and a 60-day Order was entered. Judgment in that case will enter on May 4, 2020.

cisgender female inmates in the IDOC prison system. It is reasonably inferred from Plaintiff's allegations that as a transgender woman she is similarly situated to cisgender women. Further, courts have found that transgender woman prisoners are similarly situated to cisgender woman prisoners for purposes of an equal protection claim. *See, e.g.*, *Hampton*, 2018 WL 5830730, at *11 (finding that plaintiff's transgender identity caused her to be treated differently from similarly situated female inmates); *Doe v. Massachusetts Dep't of Corr.*, No. 17-12255-RGS, 2018 WL 2994403, at *9 (D. Mass. June 14, 2018) (accepting transgender woman prisoner's argument that the pertinent category of similarly situated individuals is "other female inmates in Massachusetts prisons"); *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1120 (N.D. Cal. 2015) (finding that transgender woman prisoner adequately stated an equal protection claim where she alleged that "Defendants treated her differently from a similarly situated non-transgender woman in need of medically necessary surgery"). Here, Plaintiff alleges sufficient facts to support her claim.

In Count 2, Plaintiff alleges IDOC staff have intentionally discriminated against her by subjecting her to constant verbal sexual harassment, insults, threats, and intimidation that male prisoners do not endure due to her transgender status. She alleges that since being housed in IDOC custody, including during her most recent (current) placement at Danville, she has been constantly harassed based on her gender identity. In addition, correctional and medical staff constantly misgender Plaintiff, referring to her as "mister" and using male pronouns even though they are aware that she is a transgender woman. Plaintiff alleges sufficient facts to support her claim.

*Count 3 – Failure to Protect*

Defendants contend Plaintiff's claim against Rob Jeffreys, in his official capacity as the Acting Director of IDOC, is barred by sovereign immunity because a suit against a party in their official capacity is a suit against the State. The claim against Jeffreys in his official capacity is for injunctive relief and is, therefore, proper. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper Defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

Defendants also contend that the claims against Dennison and Walker are barred by sovereign immunity because Plaintiff alleges that they promulgated rules, regulations, policies and procedures, supervised staff, and managed operations at Shawnee Correctional Center and, as such, they should be considered as being sued in their official capacities. Although Plaintiff includes these allegations as to Dennison and Walker in the description of parties (Doc. 64, p. 3), those allegations are not repeated. Instead, the claim is made against Dennison and Walker in their individual capacities. (*Id.*, pp. 3, 23, 24, 28). Plaintiff alleges personal involvement by Dennison and Walker in her failure to protect claim with regard to the rape by her cellmate at Shawnee. (*Id.*, p. 7). She told Dennison and Walker before the rape that she did not feel safe and needed to be moved, but they refused to move her. (*Id.*). Walker allegedly played a role in housing her with that cellmate who had been investigated for sexual misconduct and identified as a "predator" and who was not allowed to be housed with vulnerable prisoners like Plaintiff. (*Id.*, pp. 7, 9). Plaintiff's allegations are sufficient to proceed against Dennison and Walker.

*Count 4 - ADA*

Defendants contend Plaintiff failed to allege that her Gender Dysphoria is caused by a physical impairment and, therefore, she has failed to allege that she is a qualified individual with a disability. The question is whether Plaintiff is an "otherwise qualified individual with a disability" as defined in the ADA. The ADA specifically exempts "gender identity disorders not resulting from physical impairments" from the definition of disability. 42 U.S.C. § 12211(b)(1). The term "gender identity disorder" was replaced by the term "gender dysphoria" in the Diagnostic and Statistical Manual of Mental Disorders ("DSM") of 2013, with the publication of the fifth edition ("DSM-5"). There is significant disagreement as to whether gender dysphoria falls into the ADA's categorical exclusion among the few courts that have discussed the issue. *See Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 753–54 (S.D. Ohio 2018) (gender dysphoria not resulting from physical impairment is within the ADA's exclusionary language); *Michaels v. Akal Sec., Inc.*, No. 09-CV-01300-ZLW-CBS, 2010 WL 2573988, at *6 (D. Colo. June 24, 2010) (gender dysphoria is a gender identity disorder and therefore excluded); *Blatt v. Cabela's Retail, Inc.*, No. 5:14-CV-04822, 2017 WL 2178123, at *3 (E.D. Pa. May 18, 2017) (gender dysphoria resulting in substantial limits on major life activities falls outside the ADA's exclusionary language); *Doe v. Massachusetts Dep't of Corr.*, No. CV 17-12255-RGS, 2018 WL 2994403, at *6 (D. Mass. June 14, 2018) (drawing a distinction between gender identity disorder and gender dysmorphia and suggesting that there may be a physical etiology underlying gender dysmorphia sufficient to take it out of "not resulting from physical impairments" category). At this point in the case, the Court cannot categorically say that

gender dysphoria falls within the ADA's exclusionary language and will allow this claim to proceed.

Defendants also contend Plaintiff failed to allege that she has been denied the benefits of any services, programs, or activities due to her gender dysphoria. The First Amended Complaint does not mention any services, programs, activities, schooling, or jobs that she has been denied due to her diagnosis of gender dysphoria. Instead, she simply states that she has not been provided with the reasonable accommodation of a transfer to a women's facility.

The Seventh Circuit has defined two distinct forms of discrimination: disparate treatment and failure to accommodate. *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021-22 (7th Cir. 1997). To state a failure to accommodate claim, a plaintiff must establish that: (1) she is a qualified individual with a disability; (2) the defendants were aware of her disability; and (3) the defendants failed to reasonably accommodate the disability. *Brumfield v. City of Chicago*, 735 F.3d 619, 631 (7th Cir. 2013). Here, Plaintiff alleges she has been denied the reasonable accommodation of a transfer to a women's prison and is not treated by prison officials in a manner consistent with her gender identity. Plaintiff adequately asserts that, unlike other female inmates, she was assigned to a men's prison by virtue of her gender assignment at birth and denied access to facilities and programs that would correspond with her gender identification. Additionally, IDOC's biological sex-based assignment policy has a disparate impact on inmates with gender dysphoria because it injects them into a prison environment that is contrary to a critical aspect of their prescribed treatment (that they be allowed to live as a woman). This is sufficient for

this claim to proceed.

*Counts 5 and 6 – Due Process and Retaliation*

At the time of the filing of her First Amended Complaint, Plaintiff resided at Elgin Treatment Center. Plaintiff sought injunctive relief in Counts V and VI in the form of her release from Elgin. Plaintiff has since been transferred out of Elgin and back to Danville. Plaintiff concedes that these claims are moot and, accordingly, Counts 5 and 6 will be dismissed.

*Count 7 – Unlawful Policies and Practices (Monell)*

Defendants contend Plaintiff's *Monell*[2] claim for unlawful policies and practices against Defendant Jeffreys, in his official capacity, is essentially a suit against the State, which is not permitted. Defendants are correct that states and state agencies enjoy Eleventh Amendment immunity from Section 1983 suits for money damages filed in federal court absent some exceptions not relevant here. *See Quern v. Jordan*, 440 U.S. 332, 338 (1979); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995). In the First Amended Complaint, however, Plaintiff seeks prospective injunctive relief, for which the State of Illinois is not immune. *Id.*; *Ex Parte Young*, 209 U.S. 123 (1908). In her response to the motion to dismiss, Plaintiff concedes a monetary damages claim would be improper and states she seeks declaratory and injunctive relief to prevent continued constitutional violations against transgender women in IDOC custody.

---

[2] *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978).

Defendants also suggest that Count 7 is subject to dismissal because the basis for the claim is alleged violations of the Prison Rape Elimination Act ("PREA"), a statute which does not give rise to a private cause of action. Plaintiff concedes PREA does not give rise to an independent cause of action, but the claims are not brought under the PREA nor does she allege a violation of the PREA. Instead, Count 7 alleges that Defendants have a number of policies which violate her rights, including a policy or practice of failing to adequately investigate PREA claims. Count 7 does not allege a violation of the PREA and it can, accordingly, proceed as a *Monell* claim.

*Count 8 – Intentional Infliction of Emotional Distress*

Defendants contend the intentional infliction of emotional distress claim, which arises under Illinois state law, is barred by the Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/1. Under that law, "the State of Illinois is immune from suit in any court, except as provided in the Illinois Court of Claims Act, 705 Ill. Comp. Stat. 505/8 (and other statutes not relevant here), which vests jurisdiction over state tort claims against the state in the Illinois Court of Claims. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). A claim against a state official or employee is a claim against the state when "'(1) [there are] no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) ... the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.'" *Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016) (quoting *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (1990) (quoting *Robb v. Sutton*, 498 N.E.2d

267, 272 (1986)). "Sovereign immunity affords no protection when agents of the state have acted in violation of statutory or constitutional law or in excess of their authority." *Leetaru v. Board of Trustees of University of Illinois*, 32 N.E.3d 583 (Ill. 2015). The allegations in the First Amended Complaint indicate Defendants' actions were rooted in an abuse of power or authority and in violation of Plaintiff's constitutional rights, which is sufficient at this stage to avoid the sovereign immunity bar.

Alternatively, Defendant argues Plaintiff's claim for Intentional Infliction of Emotional Distress against Rob Jeffreys, in his official capacity, as the Acting Director of the Illinois Department of Corrections, as well as the claim against Dennison and Walker, are barred by sovereign immunity. Plaintiff acknowledges that Count VIII is not against Rob Jeffreys but is only against defendants sued in their individual capacities. Plaintiff also properly alleges individual capacity claims against Dennison and Walker because she alleges that they refused to move her to a new cell and played a role in housing her with an inmate that later raped her. Accordingly, Count 8 is not barred by sovereign immunity and may proceed.

### Duplicate claims – Counts 1, 2, 3, and 4

Defendants argue Counts 1, 2, 3, and 4 of Plaintiff's First Amended Complaint should be dismissed as they are duplicative of claims in another case pending in this Court (which has now settled). "It is well recognized that a federal district court has the inherent power to administer its docket in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases." *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1212–13 (N.D. Ill.

1983). The district court has broad discretion to dismiss a complaint "'for reasons of wise judicial administration … whenever it is duplicative of a parallel action already pending in another federal court.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 888–89 (7th Cir. 2012) (quoting *Ridge Gold Standard *889 Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F.Supp. 1210, 1213 (N.D. Ill.1983)). "A suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." *Id.* (internal citations omitted).

*Counts 1 and 2*

Defendants contend Counts 1 and 2 are duplicative of claims of violation of the equal protection clause in Case No. 16-92. In that case, Plaintiff sought leave to file a Fifth Amended Complaint, requesting to assert two new Fourteenth Amendment equal protection claims based on existing facts, which was denied. The Court's Order indicates that Plaintiff admitted that the equal protection claims were based on the same facts as her other claims and therefore could have been asserted much sooner. The Court found that permitting an amendment to the Complaint at such a late stage would only protract litigation and prejudice the Court itself.

Defendants argue that the claims brought in this case are the same claims previously denied by this Court in Case No. 16-92 and should be considered duplicative of those denied claims. While there is some overlap in the facts, those facts merely provide background for Plaintiff's ongoing equal protection violation. The claims in this case also pertain to events that occurred after the events pled in Case No. 16-92. Further, the primary relief sought is injunctive, which would no longer be available in Case No.

16-92, because the events pled in that case ended with Plaintiff's incarceration at Shawnee. Thus, the Court finds that these claims are not duplicative of Plaintiff's earlier case.

*Count 3*

Count 3 of Plaintiff's First Amended Complaint alleges a claim for failure to protect against all Defendants in this matter. Plaintiff alleges that Defendants are deliberately indifferent to the risks of harm she faces in a men's prison. Defendants argue that many of the factual allegations regarding Plaintiff's failure to protect claim are centered on allegations that are also contained within Case No. 16-92, in which she has also brought a claim for failure to protect. They contend that Plaintiff's claim in both cases is based on similar allegations, and requests compensatory damages, as well as injunctive and declaratory relief.

While some factual allegations are alleged in both cases, in this case, the earlier facts appear to provide a background for the failure to protect claim as it pertains to injunctive relief. The failure to protect claim in this case is primarily based on new factual allegations and defendants not named in Case No. 16-92. As Plaintiff points out, her failure to protect claim is based on abuse and harassment which occurred at Shawnee, Dixon, Graham, and Danville. The only overlapping defendant on the failure to protect claim is Shawnee Warden Dennison. Plaintiff was incarcerated at Shawnee at the time the Third Amended Complaint was filed in Case No. 16-92, but the claim against him in this case pertains to a rape by a cellmate that is not the subject of the earlier case. The rape occurred on June 29, 2018 – 10 days after the Third Amended Complaint was filed in Case

No. 16-92. Thus, the failure to protect claim is not duplicative.

*Count 4*

Count 4 of Plaintiff's First Amended Complaint alleges a claim for violation of the ADA against Defendant Jeffreys, in his official capacity. Plaintiff alleges that the Defendant violated the ADA by discriminating against her on the basis of her Gender Dysphoria and failed to provide her with the accommodation of being transferred to a women's prison. As mentioned, Plaintiff also brought a claim for violation of the ADA against the Acting Director of the Illinois Department of Corrections in Case No. 16-92. Defendants contend Plaintiff's claim for violation of the ADA in Case No. 16-92 includes the same defendant, the same request for relief, and virtually the same factual allegations as her claim in this case and therefore, should be dismissed as it is duplicative of the 2016 case.

But the ADA claim in Case No. 16-92 was based on allegations of inadequate medical treatment for Plaintiff's gender dysphoria and access to medical service programs and activities at Western, Centralia, and Shawnee (Doc. 182, pp. 12-13), while the ADA claim in this case is against IDOC Director Jeffreys for failing to provide Plaintiff reasonable accommodations in the form of a transfer to a women's prison. (Doc. 64, p. 24). The claims are not, therefore, duplicative.

Additionally, Defendants contend that, to the extent Plaintiff's First Amended Complaint alleges a claim for violation of the Eighth Amendment for failure to provide adequate medical care for Plaintiff's Gender Dysphoria, the claim should also be dismissed as duplicative. But Plaintiff makes clear in her First Amended Complaint that

she is not pursuing a claim for medical treatment and only cites to her medical treatment to demonstrate that she faces a risk of harm in a men's prison, requiring transfer (Doc. 64, p. 5 n. 2). Thus, Count 3 is not duplicative because it does not involve access to medical treatment.

For the reasons stated above, the Court finds that Counts 1, 2, 3, and 4 of Plaintiff's First Amended Complaint in Case No. 19-501 are not duplicative of the claims in Case No. 16-92 and, therefore, the motion to dismiss on that basis is denied.

### MOTION FOR CHANGE OF VENUE

Venue for federal civil rights actions brought under 42 U.S.C. § 1983 is governed by 28 U.S.C. § 1391(b). According to that statute, such actions may be brought only in (1) the judicial district where any defendant resides (if all defendants reside in the same State), (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1404(a) provides that: "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendant bears the burden of establishing that the transferee forum is "clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir.1986). In weighing the factors, a court must consider the statutory factors in light of all the circumstances of the case. *Id.* at 219. Courts have broad discretion in weighing the relevant factors and deciding whether to grant or deny

a motion to transfer under § 1404(a). *Id.*

When assessing convenience, courts generally look to the availability of and access to witnesses, each party's access to and distance from resources in each forum, the location of material events, and the relative ease of access to sources of proof. *Research Automation, Inc. v. Schrader–Bridgeport Int'l Inc.,* 626 F.3d 973, 978 (7th Cir. 2010). Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer. *Id.*

As to the interests of justice, courts consider "docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id.* (internal citations omitted).

"[U]less the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)). In other words, a tie goes to the plaintiff. *Id.* at 665.

Defendants' first argument relies on the dismissal of Counts 1, 2, 3, and 4. The motion to dismiss those claims, however, is denied. Counts 1-4 relate to events that occurred while she was incarcerated at Shawnee, Dixon, and Danville. During the relevant times, seven of the defendants were employed at Shawnee, one defendant was employed at Dixon, two defendants were employed at Danville, and the final defendant is the IDOC Director in his official capacity. Based on the allegations in the First Amended

Complaint, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. Thus, venue is proper here.

Defendants argue in the alternative that this action should be transferred for the convenience of the parties and witnesses. They suggest that the following reasons in support of a transfer to the Central District of Illinois:

(1) Plaintiff is currently incarcerated at Danville and was incarcerated there at the time of the filing of this Complaint. Danville is located in the Central District of Illinois.

(2) Counts 1, 2, 4, 5, 6, and 7 request declaratory and injunctive relief and are directed solely at Defendant Jeffreys, the Acting Director of IDOC. The headquarters of IDOC is located in Springfield, Illinois, which is also in the Central District of Illinois.

(3) Portions of Counts 3 and 8 of Plaintiff's First Amended Complaint request damages from Defendants employed at Danville and Dixon. Danville is located in the Central District of Illinois and as such, that would be the proper and most convenient venue. Dixon is located in the Northern District of Illinois and, as such, the Central District of Illinois would certainly be a more convenient venue for the Dixon Defendant than the Southern District of Illinois.

Unfortunately, in their argument, Defendants disregarded the seven Shawnee defendants in this case. The convenience factor does not point to a particular venue as there are parties and witnesses located in this District and the Central District.

As to the interests of justice, this Court has addressed similar issues in *Hampton v. Baldwin*, No. 3:18-cv-550-NJR-RJD, 2018 WL 5830730 (S.D. Ill. Nov. 7, 2018), and *Monroe v. Baldwin*, No. 3:18-cv-00156-NJR-MAB, 2019 WL 6918474 (S.D. Ill. Dec. 19, 2019), and thus that factor also weighs in favor of the case remaining in this District.

Upon consideration of all relevant factors, and keeping in mind that a plaintiff's

choice of forum should rarely be disturbed, the Court finds that Defendants have not met their burden to establish that the Central District of Illinois is clearly more convenient for the parties and witnesses and better serves the interest of justice than this District. Accordingly, the motion to transfer venue is denied.

### DISPOSITION

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. 103) is **DENIED** as to Counts 1, 2, 3, 4, 7, and 8 and **GRANTED** as to Counts 5 and 6. The Motion for Change of Venue is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  May 1, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**